Condon v. Barr.

---

#### DENNIS CONDON v. MARGARET A. BARR.

1. It is essential to recovery against a married woman, in an action at law by force of the statute of 1862, that she be shown to have a separate estate, chargeable in equity with the debt contracted by her.
2. A mere moral obligation or duty is not a sufficient consideration to support a subsequent express promise to pay.
3. An obligation, enforceable in equity, will support an express promise to pay, and make it suable at law.
4. At common law, the promise of a *feme covert* could not be enforced against her, unless she had a separate estate. No personal decree could be made against her, but her contract operated as an appointment out of her separate estate.
5. Where the *feme covert* has no separate estate, her contract does not create an obligation which is enforceable in equity, and therefore is not such a consideration as will support her express promise to pay, made after the death of her husband.

---

On rule to show cause.

Argued at June Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *W. Strong & Sons.*

For the defendant, *A. V. Schenck.*

The opinion of the court was delivered by

VAN SYCKEL, J. This suit was brought to recover money alleged to have been loaned by the plaintiff to the defendant

during her coverture, between the years 1866 and 1870. To support his case, the plaintiff produced evidence to show that the money was loaned to the defendant in the lifetime of her husband, and that after his death the defendant promised to pay the plaintiff. Under the instructions of the trial court, a verdict was rendered for the plaintiff. The questions to be disposed of arise on an application for a new trial, and are:

First, whether, under the act of March 24th, 1862, a married woman who lives with and is supported by her husband, and who has not any separate estate of her own, nor any separate trade or business, is liable at law for money loaned or advanced to her during her coverture.

Second, whether, under the facts stated, any legal liability exists on the part of the defendant to pay the plaintiff.

The act of 1862 has been so repeatedly construed by this court that a brief reference to the cases will dispose of the first question.

In *Eckert* v. *Reuter*, 4 *Vroom* 266, this court declared "that the act of 1862 should be strictly construed, and not held to endow the wife with any new power to contract. As a *feme covert*, she could only contract in reference to an equitable liability against her separate estate for such debts and claims as could be charged against it. This act merely recognizes that power; it does not extend it, and only gives a remedy in the courts of law for the collection of such equitable debts or claims. Whenever her separate estate could be reached in the Court of Chancery for such debts or claims, a suit at law could be maintained therefor."

And again: "The remedy given by the act is personal, and by a personal judgment; but that remedy can be adopted only when the debt or claim would be equitably chargeable against any separate estate she may have had when her equitable liability was created."

This construction of the act of 1862 has been rigidly adhered to in every instance in which it has been since presented for adjudication.

In *Van Kirk* v. *Skillman*, 5 *Vroom* 109, the Chief Justice,

in adverting to the case of Eckert *v.* Reuter, says: "The principle of that construction was this: that the act did not attempt to confer upon a *feme covert* any new power to contract; that the only instance known to the law in which a *feme covert* could, in her own right, bind herself by agreement, was where she had property of her own, with respect to which her agreements would be good in equity; and that consequently, if a *feme covert* having no separate estate did contract, such an act being wholly void, no debt or claim could thereby remain unsatisfied."

To this interpretation and limitation of the act of 1862, this court has committed itself in all subsequent decisions. *Lewis* v. *Perkins,* 7 *Vroom* 133; *Wilson* v. *Herbert,* 12 *Vroom* 454; *Mather* v. *Brokaw,* 14 *Vroom* 587; *Haywood* v. *Shreve,* 15 *Vroom* 94; *Morris* v. *Laidley,* 16 *Vroom* 435; *Bradley* v. *Johnson,* 16 *Vroom* 487; *Bradley* v. *Johnson,* 17 *Vroom* 271.

It is essential, therefore, to recovery in an action at law by force of the statute of 1862, that the wife shall be shown to have a separate estate, chargeable in equity with the debt contracted by her.

The absence of that element in this case precludes the plaintiff from invoking the support of that statute.

The question remains whether an action can be maintained upon the promise made by the defendant after the death of her husband.

That a mere moral obligation or duty, as an executed consideration, is not a sufficient consideration to support a subsequent express promise to pay is shown by Mr. Justice Depue, in *Freeman* v. *Robinson,* 9 *Vroom* 383, to be well settled in the adjudications in both England and in this country.

The verdict, therefore, in this case rests upon no stable foundation, unless some consideration can be found to support the defendant's promise, which, in legal aspect, is of higher quality than a mere moral obligation.

In *Rusling* v. *Rusling,* 18 *Vroom,* 8, the Chief Justice says that an equitable obligation will support a promise to pay, and that, by force of such promise, what was before an equit-

able obligation is transformed into an obligation enforceable at law.

This discussion turns upon the question whether, prior to the express promise, a duty rested upon the defendant to pay the plaintiff's claim, which could have been enforced in a court of equity.

In *Pentz* v. *Simonson*, 2 *Beas.* 232, Chancellor Green says that a married woman may incur liabilities, which will be charged upon her separate estate, but that no doctrine of the common law is better settled than that a married woman can enter into no contract or covenant by which she will be personally bound.

In equity a liability assumed by a married woman will be charged upon her separate estate, but she cannot, in the absence of statutory enactment, be made personally liable. *Bradley* v. *Johnson*, 17 *Vroom* 271.

The authorities are collected in *Francis* v. *Wigzell*, 1 *Madd.* 145.

Lord Cottenham, in *Aylett* v. *Ashton*, 1 *Milne & Craig* 105, in commenting on *Francis v.* Wigzell, says : "It was there decided, and clearly in conformity with all previous decisions, that the court has no power against a *feme covert in personam*, but that if she has separate property, the court has control over that separate property ; in all cases, however, the court must proceed *in rem* against the property. A *feme covert* is not competent to enter into contracts so as to give a personal remedy against her. Although she may become entitled to property for her separate use, she is no more capable of contracting than before ; a personal contract would be within the incapacity under which she labors." Sir Thomas Plumer says : "There is no case in which this court has made a personal decree against a *feme covert.*"

Mr. Justice Story, in his *Equity Jurisprudence*, vol. 2, § 1399, expresses the same view : "She may charge her separate estate, her agreement, however, creating the charge is not (it has been said), properly speaking, an obligatory contract, for,

as a *feme covert*, she is incapable of contracting; but is rather an appointment out of her separate estate."

I think search will be made in vain to find in the history of equity jurisprudence a case in which a *feme covert* has been charged with an obligation, unless it appeared that she had a separate estate.

The immunity of the wife at common law did not rest upon the fact that her husband would be held for her contracts. The husband's liability for the wife's engagements, made without his authority during coverture, was circumscribed within very narrow bounds.

The disability of the wife to incur personal obligations was an incident of the marriage relation, supposed to be dictated by a wise public policy.

The rule that her separate existence was merged by coverture in that of her husband was relaxed in equity, and her separate existence recognized for the sole purpose of dealing with her separate estate. The power to charge her in a court of equity was co-extensive with and inseparable from the separate estate, and expired with its appropriation.

An interesting and instructive review of this doctrine will be found in *Perkins* v. *Elliott*, 8 *C. E. Green* 526.

The legislation in force, when the alleged loans were made to the defendant, furnishes no reason in public policy for amplifying the scope of this equitable rule.

The defendant in this case being without a separate estate, there was, at the time of the new promise, no enforceable equitable obligation resting upon her, which could in law support such promise, and transmute an equitable into a legal obligation. The promise to pay was without valid consideration, and therefore *nudum pactum.*

Such is the view taken in the elaborate note to *Wennall* v. *Adney*, 3 *B. & P.* 247, in which the English cases are reviewed. It is there said that "an express promise, as it should seem, can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some

positive rule of law, but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision."

Under this rule, a promise to pay a debt barred by the statute of limitations, a promise by a man after he becomes of age to pay a debt contracted during minority, a promise by a bankrupt after his certificate to pay his debts in full, and other like promises, may be enforced.

But a promise by a *feme covert* is not merely voidable, but absolutely void at common law. Therefore, in *Lloyd* v. *Lee*, 1 *Str.* 94, the promise of the defendant after her husband's death to pay a promissory note given by her during coverture was held to be void.

*Lee* v. *Muggeridge*, 5 *Taunton* 36, is cited as a case holding the contrary rule, but in that case, the married woman, when she executed the bond during coverture, had a separate estate, and thus incurred an obligation which equity would have enforced.

*Littlefield* v. *Shee*, 2 *B. & A.* 811 and *Meyer* v. *Haworth*, 8 *A. & E.*, 467 are in line with Lloyd *v.* Lee.

The doctrine upon which these cases rest was adhered to by Lord Denman, C. J., in *Beaumont* v. *Reeve*, 8 *Q. B.* 483, and was approved in this court in Freeman *v.* Robinson, before cited.

In New Hampshire it is well settled that the promise of a married woman, made when the common law disability of coverture existed, does not furnish a consideration upon which her promise to pay the same debt, made after the death of her husband, can be sustained. In the recent New Hampshire case of *Kent* v. *Rand* the authorities are collected. *East. Rep., p.* 174, (October 30th, 1886).

In my judgment, the rule to show cause should be made absolute.